## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., et al., | : |
| | : |
| | : |
| Plaintiffs, | : |
| v. | :    C. A. No. 02-359-MPT |
| | : |
| UNIVERSAL AVIONICS SYSTEMS CORP., et al., | : |
| | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

Thomas C. Grimm, Esquire, and Benjamin J. Schladweiler, Esquire, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington, Delaware 19899.

Of Counsel: Steven D. McCormick, Esquire, and Atif N. Khawaja, Esquire, Kirkland & Ellis LLP, New York, New York.

Attorneys for Honeywell International Inc. and Honeywell Intellectual Properties, Inc.

Frederick L. Cottrell, III, Esquire, and Kelly Farnan, Esquire, Richards, Layton & Finger, One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899.

Of Counsel: Scott J. Bornstein, Esquire, and Allen A. Kassenoff, Esquire, Greenberg Traurig, LLP, New York, New York.

Attorneys for Universal Avionics Systems Corp.

Dated: November 12, 2008

Wilmington, Delaware

Thynge, U.S. Magistrate Judge

## Procedural Background

This patent infringement action involves technology in the aviation industry. The

parties are competitors in the market for terrain warning systems and displays.

Honeywell International Inc.[1] and Honeywell Intellectual Properties, Inc.[2] (collectively,

"Honeywell" manufacture and sell a terrain awareness and warning system, the

"Enhanced Ground Proximity Warning System" or "EGPWS." Since February 29, 2000,

Universal Avionics Systems Corp. ("Universal")[3] manufactures and sells its terrain

awareness and warning system, otherwise known as "TAWS." Sandel Avionics, Inc.

("Sandel")[4] manufactures and sells a terrain awareness and warning system, the

"ST3400 TAWS/RMI."

Honeywell began this action on May 10, 2002 seeking monetary recovery and

injunctive relief for alleged willful infringement of five patents-in-suit: U.S. Patent Nos.

5,839,080 ("'080 patent"),[5] 6,122,570 ("'570 patent"),[6] 6,219,592 ("'592 patent"),[7]

---

[1] Honeywell International Inc. is a Delaware corporation having its principal place of business in Morristown, New Jersey.

[2] Honeywell Intellectual Properties, Inc. is an Arizona corporation having its principal place of business in Tempe, Arizona.

[3] Universal Avionics Systems Corp. is an Arizona corporation with its principal place of business in Tucson, Arizona.

[4] Sandel Avionics, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Vista, California.

[5] The '080 patent, the primary patent in this litigation, entitled "Terrain Awareness System," was issued on November 17, 1998 to Hans R. Muller, Kevin J. Conner and Steven C. Johnson.

[6] The '570 patent entitled "System and Method for Assisting the Prevention of Controlled Flight into Terrain Accidents," was issued on September 19, 2000 to Hans R. Muller, Kevin J. Conner and Steven C. Johnson. Donald Bateman was later added as an inventor of the '570 patent through a certificate of correction. Mr. Bateman is a Honeywell chief engineer for flight safety systems. Messrs.

6,092,009 ("'009 patent")[8] and 6,138,060 ("'060 patent")[9] against Sandel and

Universal.[10] Sandel and Universal answered the complaint and raised affirmative

defenses and counterclaims for declaratory relief that the patents-in-suit are invalid and

not infringed and that inequitable conduct occurred.

The court construed the disputed claims in a memorandum dated May 30, 2003.

As a result of motion practice, Universal and Sandel's joint motion for invalidity was

granted in part and denied in part.[11] Left for trial were the invalidity allegations based

on the prior art regarding claims 27-33 of the '009 patent and claims 4-5 of the '060

patent.[12] The court also found that the accused devices did not infringe the asserted

claims of the '080, '570 and '592 system patents and the '009 display patent.

---

Muller, Johnson and Conner were enlisted by Bateman to develop a look ahead ground proximity system, now known as Honeywell's EGPWS.

[7] The '592 patent entitled "Method and Apparatus for Terrain Awareness," was issued on April 17, 2001 to Hans R. Muller, Kevin J. Conner and Steven C. Johnson.

[8] The '090 patent entitled "Aircraft Terrain Information System," was issued on July 18, 2000 to J. Howard Glover.

[9] The '060 patent entitled "Terrain Awareness System," was issued on October 24, 2000 to Kevin Conner and Hans Rudolph Muller.

[10] The complaint also named Goodrich Corp. and Goodrich Avionics Systems, Inc. (collectively, "Goodrich") as defendants. On January 24, 2003, Honeywell and the Goodrich defendants executed a settlement and license agreement. The Goodrich defendants subsequently were dismissed from the case by a stipulated order of dismissal.

[11] Prior to responding to the outstanding motions for summary judgment, Honeywell represented to Universal and Sandel that it would not pursue infringement of certain previously asserted claims of the '009 and '060 patents. Based on this representation, Honeywell attempted to withdraw all of the originally asserted display claims, except claims 27-33 of the '009 patent and claims 4-5 of the '060 patent. As a result, Honeywell alleged that this court no longer had subject matter jurisdiction with respect to those claims based on the absence of a case and controversy.

[12] Claims 1-3, 8, 9, 13, 24, 34-36, 41 and 43-45 of the '009 patent and claims 1-3 of the '060 patent were found to be anticipated by the prior art. Universal and Sandel's motions for summary judgment of obviousness were denied. The court reserved for trial Universal and Sandel's motion for summary judgment of on-sale and public use bars.

Additionally, the court determined that Sandel's ST 3400 TAWS did not infringe claim 4 of the '060 display patent,[13] and held that neither Sandel's nor Universal's TAWS contained the "look ahead distance" and "terrain floor boundary" limitations identical to those disclosed and claimed in the '080 patent, as well as, in the remaining patents-in-suit. Based on this finding, Universal supplemented its motion for summary judgment of non-infringement of the '060 patent. Consistent with its previous rulings, this court entered partial summary judgment of non-infringement with respect to claims 4 and 5 of the '060 patent. As a result, all claims of infringement were dismissed.

Thereafter, the parties agreed to a bench trial for the remaining issues. Thus, Universal and Sandel assumed the role of plaintiffs for trial. A seven day bench trial was conducted in November 2003. After post-trial briefing, the court determined that the challenged claims of the patents-in-suit were not invalid or unenforceable due to inequitable conduct and denied Sandel's counterclaim under the clean hands doctrine and Universal's commercial counterclaims.

Subsequently, Honeywell appealed contesting issues of claim construction, infringement, and subject matter jurisdiction on certain claims withdrawn from the litigation. Universal and Sandel cross-appealed on the court's denial of on-sale and public use bar. In addition, Sandel appealed the court's decision that Honeywell did not commit inequitable conduct. Universal similarly appealed the denial of its commercial counterclaims. The Federal Circuit vacated claim construction for certain terms and remanded the matter for a new infringement determination. That court also affirmed

---

[13] Universal's motion did not address claims 4 and 5 of the '060 patent in the first instance.

4

this court's retention of jurisdiction over the withdrawn claims and the decision that 35 U.S.C. § 102(b) does not erect a bar. In addition, the Federal Circuit affirmed this court's decision of no inequitable conduct and denial of Universal's commercial counterclaims.

After the matter was remanded, Honeywell withdrew all infringement allegations regarding the '009 and '060 patents and certain claims of the other three patents-in-suit. As a result, the claims presently being asserted by Honeywell are only claim 1 of the '080 patent, claim 1 of the '570 patent and claim 1 of the '592 patent (collectively the "080 patents").

This memorandum opinion addresses Universal's motion for summary judgment of no willful infringement.

**Factual Background**

The patents-in-suit are designed to solve a problem in the aviation industry known as Controlled Flight Into Terrain ("CFIT"). CFIT refers to a category of accidents that occur when an aircraft is flown into the ground during controlled flight. CFIT crashes generally occur as a result of pilot error and are distinguished from other accidents involving loss of control or mechanical failure because the ground collision is not due to system malfunction or failure.

A precursor to the technology described and claimed in the patents-in-suit is the Ground Proximity Warning System ("GPWS"). GPWS uses radar altimeter (also referred to as radio altitude) input to determine if flight conditions are such that inadvertent contact with the terrain is imminent. Because the GPWS is limited to the downward looking radar altimeter, it has certain disadvantages and cannot prevent all

5

CFIT accidents.

The patents-in-suit relate to Honeywell's research and development to improve or "enhance" GPWS. The basic concept of Honeywell's Enhanced GPWS ("EGPWS") is that it provides "virtual look ahead . . . to be able to actually predict where the airplane was going based on the terrain database and an accurate knowledge of where the aircraft was . . . ." This forward looking capability is intended to provide increased alerting time to warn pilots of potentially hazardous terrain ahead. Honeywell's EGPWS also gives "the pilot a picture," that is, a threatening terrain display in addition to a verbal alert.

In response to the CFIT problem, Universal developed TAWS (Terrain Awareness Warning System). It first introduced that system into the market on October 15, 1998. The initial sales were non revenue sales. The first cash sale of TAWS occurred on February 29, 2000. At the time of Universal's initial launch of TAWS in 1998 and its first cash sales, the only patent that had been issued was the '080 patent.[14]

Prior to introducing its TAWS product, Universal assembled a team to find and review third party patents related to TAWS. In that process, Universal identified the '080 patent. In fact, Universal directed its review for Honeywell patents because it knew that Honeywell had developed a warning system that was a precursor to TAWS. The patent review involved outside patent counsel. Accordingly, Universal and its outside patent counsel determined that the '080 patent was not infringed by TAWS. However,

_____

[14] Further, Honeywell did not mark its EGPWS product and notice of infringement was provided by filing suit.

6

no written record of that patent analysis has been produced.

In the 2002 time frame, Universal attempted to license its TAWS product by negotiating with Rockwell Collins ("Collins"), an avionics company. During those negotiations, Collins requested that Universal produce a patent infringement letter from the attorney who had advised it during the patent review of TAWS. Universal did not provide that letter.

## Discussion

### Standard of Review- Summary Judgment

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[15] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party that "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[17] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a

---

[15] Fed. R. Civ. P. 56(c).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[17] *Id.* at 323.

sufficient showing on an essential element of her case with respect to which she has the burden of proof.[18] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[20] However, a party may move for summary judgment with or without supporting affidavits.[21] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[22]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial."[23] If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[24] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[25] At the summary

---

[18] *Id.*

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[20] *Celotex*, 477 U.S. at 323.

[21] *Id.*

[22] *Id.* at 325.

[23] Fed. R. Civ. P. 56(c).

[24] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).

[25] *Anderson*, 477 U.S. at 248.

8

judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[26]  Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[27]  The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[28]

## 35 U.S.C. § 284

A patentee may recover from an infringer enhanced damages under 35 U.S.C. § 284 which allows the court to "increase the damages up to three times the award found or assessed."  Such an award is punitive in nature and "depends on a showing of willful infringement or other indicium of bad faith warranting punitive damages."[29] Recently, the Federal Circuit addressed the standard for determining whether infringement is willful.

### Willful Infringement Standard under *Seagate*[30]

As a result of the Federal Circuit's decision in *Seagate,* a new willful infringement standard exists.  No longer is willfulness based on the duty of care promulgated in

---

[26] *Id*. at 249.

[27] *Id.*

[28] *Id.* at 250.

[29] *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

[30] *In re Seagate Tech., LLC ("Seagate")*, 497 F.3d 1360 (Fed. Cir. 2007).

9

*Underwater Devices Inc v. Morrison-Knudsen Co.*[31]  In *Seagate*, the court overruled the standard establish in *Underwater Devices* because that standard "sets a lower threshold for willful infringement that is more akin to negligence," which "fails to comport with the general understanding of willfulness in the civil context."[32]  The court noted other areas of the law, such as, the Copyright Act and the Supreme Court's recent decision in *Safeco Ins. Co. of America v. Burr,* where willfulness has been defined to encompass reckless behavior.[33]  Therefore, *Seagate* made willful infringement in the patent arena consistent with the concept of infringement in other civil matters.

Under the new willfulness standard of *Seagate*, "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness."[34] A two step analysis is necessary.  Under the first step, the patentee must meet the threshold inquiry of showing "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[35]  The court recognized within the first step that "'[i]t is a high risk of harm, objectively assessed, that is the essence of recklessness at common law.'"[36]  For this step, since it involves an objective assessment,  the "state of mind of the accused

---

[31] 717 F.2d 1380, 1389-90 (Fed. Cir. 1983).

[32] *Seagate*, 497 F.3d at 1371.

[33] 127 S. Ct. 2201 (2007).

[34] *Seagate*, 497 F.3d at 1371.

[35] *Id.*

[36] *Id.* (quoting *Safeco*, 127 S. Ct. at 1215).

infringer is not relevant."[37]  Should the threshold objective standard be met, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."[38]  As a result, by eliminating the affirmative duty of care, "no affirmative obligation to obtain opinion of counsel" exists.[39] The court left it to "future cases to further develop the application of this standard." Although the court provided little, if any direction, on how to apply the new standard, it did not specifically abandon other factors previously applied to the willfulness issue, including analysis of willfulness under the totality of the circumstances.  Use of this approach is supported by footnote 5 in the *Seagate* opinion which acknowledges that standards of commerce would be an acceptable factor to consider, along with the historical recognition of trial courts having substantial discretion to enhance infringement damages depending on the circumstances of a case.[40]

Therefore, under *Seagate's* objective standard, "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid

---

[37] *Id.* at 1371.

[38] *Id.*

[39] *Id.*

[40] "Although willful infringement may authorize the award of enhanced damages, 'a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages.'" *Informatica Corp. v. Business Objects Data Integration*, 527 F. Supp. 2d 1076, 1082 (N.D. Ca. 2007), quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995).

11

patent."[41]

Seagate confirmed prior rulings that a willful infringement is not automatic merely because infringement has been found.[42] The simple fact that infringement exists does not equate to willful infringement, even where the accused has knowledge or is aware of the patent.[43]

### Analysis

Honeywell maintains that there is substantial evidence that Universal "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[44] It relies on the following facts: that Universal had not only actual knowledge of the '080 patent, but knew the risk posed by its TAWS because of Collins' request for a patent infringement opinion letter; that the opinion letter was a major issue to Collins; and no such letter was ever provided. Honeywell further contends that Universal's proposal to indemnify Collins for any lawsuits related to TAWS does not refute that Universal knew TAWS infringed the '080 patent. Honeywell also points to the testimony of Patrick Krohn, a Universal employee, noting that he repeatedly was unable to offer any explanation why Universal determined that no legal issues existed regarding the '080 patent, and as a result, the non-infringement opinion is conclusory and uncorroborated. Honeywell notes that since there is no written record to corroborate

---

[41] Black & Decker, Inc. v. Robert Bosch Tool Corp., 260 Fed. Appx. 284, 291 (Fed. Cir. 2008).

[42] Comark Comm. Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998).

[43] Id.

[44] Seagate, 497 F.3d at 1371.

12

the non-infringement analysis, the credibility of any such analysis is questionable.[45]

Honeywell submits that Universal does not argue that any defenses it asserted during litigation were known before Honeywell instituted suit, yet before litigation occurred, it made and marketed its TAWS. Moreover, Honeywell discounts the district court cases relied upon by Universal to support summary judgment because they involved receipt of opinion of counsel before litigation commenced which discussed the defenses later pursued. It also notes that the invalidity and inequitable conduct defenses raised by Universal were denied by this court which was affirmed by the Federal Circuit, and that the appellate court also denied Universal's claim that it does not infringe as a matter of law.

Universal contends that Honeywell cannot show that Universal willfully infringed the patents-in-suit because at the time that Universal introduced its TAWS product, only the '080 patent had issued.[46] It emphasizes that a number of claims raised by Honeywell of the '009 and '060 patents were found invalid as anticipated by the prior art, and that although other invalidity defenses and the inequitable conduct defense were denied, "the arguments proffered were, at a minimum, credible."[47] Universal also emphasizes that this court found non-infringement of each valid claim, which

---

[45] *Minnesota Mining & Mfg. Co. v. Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1558 (Fed. Cir. 1992) (wherein the court posits that oral opinions are not favored and carry less weight because they "may be affected by faded memories and the forces of contemporaneous litigation.").

[46] *Trading Tech. Int'l, Inc. v eSpeed, Inc.*, No.04-5312, 2008 WL 63233, at*1 (N.D. Ill. Jan. 3, 2008) (wherein the court noted that knowledge of patent application is not enough to demonstrate willfulness because there is no guarantee that any patent will issue).

[47] *TGIP Corp. v. AT&T Corp.*, 527 F. Supp. 2d 561, 579 (E.D. Tex. 2007) ("Even though AT&T ultimately did not prove its invalidity defense by clear and convincing evidence, its position was hardly objectively unreasonable.").

conclusively proves that Universal had legitimate infringement defenses, and that such defenses "demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."[48] Further, the reversal by the Federal Circuit of this court's findings of non-infringement does not prove objective recklessness.

Honeywell emphasizes that the Universal's failure to provide a non-infringement opinion letter of counsel to Collins and the absence in Krohn's deposition of an explanation why Universal concluded no legal issues existed regarding the '080 patent[49] as "fundamentally insufficient to overcome a claim of willful infringement." Honeywell's argument incorrectly places on Universal the initial burden of disproving a claim of willfulness. Although Universal moved under Fed. R. Civ. P. 56, the burden of proving by *clear and convincing evidence* willful infringement remains with Honeywell and it must present such evidence at this stage to avoid summary judgment. Under *Seagate*, Honeywell must first demonstrate that Universal's conduct was objectively reckless. Moreover, as noted in *Seagate*, there is no affirmative duty to obtain an opinion of counsel.

The unrefuted testimony, including the deposition of Patrick Glaze, a former Universal employee and in Honeywell's employ at the time of his deposition, shows that before going to market with the TAWS product, Universal performed a patent review

---

[48] *Black & Decker*, 260 Fed. Appx. at 291.

[49] Honeywell only addresses the '080 patent and not the '570 and '592 patents in its answering brief. Although the claims at issue in the three patents are similar, particularly claim 1 of the '080 patent and claim 1 of the '592 patent, there are differences. It appears that Honeywell has tacitly agreed with Universal's position on the '570 and '592 patents of no willful infringement.

14

which included technical and legal analyses. The review involved a substantial number of patents, which included the '080 patent.[50]  Universal's outside patent counsel was involved and did not identify any infringement issues.  After consulting with patent counsel, Universal understood that no legal issues arose in relation to TAWS for any patent that was reviewed.  That understanding is confirmed by Glaze's uncontroverted testimony that further implementation of the TAWS product by Universal would not have continued if the system infringed a third party's patent.  A prelitigation patent review may be more relevant to the second prong of the Seagate test (whether the alleged infringer knew or should have know of the objectively-defined risk of infringement); however, performing a patent review before entering the market with a new device evidences that Universal's conduct was not reckless.  Further, knowledge of a patent does not mean willfulness.[51]

During the licensing discussions between Universal and Collins, Honeywell filed the present action.[52]  Since this litigation followed on the heels of Collins' request for an opinion of counsel on infringement, the court does not see how Universal not producing such a letter constitutes objective recklessness or an admission of infringement. Production of such a letter to a third party would operate as a waiver of the attorney-client privilege, and could directly effect litigation strategy.  Moreover, Collins' request

---

[50] According to the testimony, between 700 to 800 patents were identified and reviewed.  The deposition of present and former Universal employees, Charles Edmonson, Patrick Glaze and Patrick Krohn, confirm that an extensive patent review occurred.

[51] *Black & Decker*, 260 Fed. Appx. at 290.

[52] The Edmonson memorandum noting Collins' request for the opinion letter is dated May 2, 2002.  Honeywell filed suit on May 10, 2002.

15

for an opinion letter on infringement during the arms-length licensing negotiations does not equate to an objectively high likelihood of infringement or knowledge of such a risk on the part of Universal, particularly in light of Universal's willingness to indemnify Collins. Honeywell has offered no evidence regarding the reasons for Collins' request or that Collins performed any infringement analysis of TAWS in relation to the '080 patent. Universal's indemnification offer refutes the second prong of *Seagate,* that it knew, believed or should have known that TAWS could infringe.

Further, Honeywell's arguments ignore the status of the case. Unlike most of the cases on which Honeywell relies, the present matter is not just at the first summary judgment stage, but has undergone a summary judgment, trial and post trial review by this court, as well as, a review by the Federal Circuit. The legal issues in the case have already been vetted by two courts. This court, under its claim construction, found that Universal did not infringe. It also held that a number of the patent claims were anticipated. Such findings validate that Universal had legitimate defenses to Honeywell's infringement claims. Although this court did not agree with Universal on its other invalidity defenses, an exhaustive analysis was required, particularly of the on-sale and public use bars, to reach a conclusion. This court's analysis of Universal's defenses to the patents show that its arguments were "substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively reckless infringer would be forced to rely upon."[53]  Honeywell must show that Universal "acted despite an

---

[53] *ResQNet.Com, Inc. v. Lansa, Inc.,* 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008).

objectively high likelihood that its actions constituted infringement of a valid patent."[54]
"Under this objective standard, both legitimate defenses to infringement claims and
credible invalidity arguments demonstrate the lack of an objectively high likelihood that
a party took actions constituting infringement of a valid patent."[55]

## Conclusion

For the reasons contained herein, Universal's motion for summary judgment of
no willful infringement is granted.  An order consistent with this opinion shall follow.

---

[54] *Seagate*, 497 F.3d at 1371.

[55] *Black & Decker*, 260 Fed. Appx. at 291.

17