## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., et al., | : |
| | : |
| | : |
| Plaintiffs, | : |
| v. | : C. A. No. 02-359-MPT |
| | : |
| UNIVERSAL AVIONICS SYSTEMS | : |
| CORP., et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

Thomas C. Grimm, Esquire, and Benjamin J. Schladweiler, Esquire, Morris, Nichols, Arsht & Tunnell, 1201 N. Market Street, P.O. Box 1347, Wilmington, Delaware 19899.
Of Counsel: Steven D. McCormick, Esquire, and Atif N. Khawaja, Esquire, Kirkland & Ellis LLP, New York, New York.
Attorneys for Honeywell International Inc. and Honeywell Intellectual Properties, Inc.

Frederick L. Cottrell, III, Esquire, and Kelly Farnan, Esquire, Richards, Layton & Finger, One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899.
Of Counsel: Scott J. Bornstein, Esquire, and Allen A. Kassenoff, Esquire, Greenberg Traurig, LLP, New York, New York.
Attorneys for Universal Avionics Systems Corp.

Thomas L. Halkowski, Esquire, Fish & Richardson, P.C., 919 N. Market Street, Suite 1100, P.O. Box 1114, Wilmington, Delaware 19899.
Of Counsel: Howard G. Pollack, Esquire, and Michael R. Headly, Esquire, Fish & Richardson, P.C., Redwood City, California.
Attorneys for Sandel Avionics, Inc.

Dated: November 12, 2008

Wilmington, Delaware

Thynge, U.S. Magistrate Judge

## Procedural Background

This patent infringement action involves technology in the aviation industry. The parties are competitors in the market for terrain awareness warning systems. Honeywell International Inc.[1] and Honeywell Intellectual Properties, Inc. ("HIPI")[2] (collectively, "Honeywell") manufacture and sell a terrain awareness and warning system, the "Enhanced Ground Proximity Warning System" or "EGPWS." Since February 29, 2000, Universal Avionics Systems Corp. ("Universal")[3] manufactures and sells its terrain awareness and warning system, otherwise known as "TAWS." Sandel Avionics, Inc. ("Sandel")[4] manufactures and sells a terrain awareness and warning system, the "ST3400 TAWS/RMI."

Honeywell began this action (*Honeywell I*) on May 10, 2002 seeking monetary recovery and injunctive relief for alleged willful infringement of five patents-in-suit: U.S. Patent Nos. 5,839,080 ("'080 patent"), 6,122,570 ("'570 patent"), 6,219,592 ("'592 patent"), 6,092,009 ("'009 patent") and 6,138,060 ("'060 patent") against Sandel and Universal. Sandel and Universal answered the complaint and raised affirmative defenses and counterclaims for declaratory relief that the patents-in-suit are invalid and not infringed and that inequitable conduct occurred.

---

[1] Honeywell International Inc. is a Delaware corporation having its principal place of business in Morristown, New Jersey.

[2] Honeywell Intellectual Properties, Inc. is an Arizona corporation having its principal place of business in Tempe, Arizona.

[3] Universal Avionics Systems Corp. is an Arizona corporation with its principal place of business in Tucson, Arizona.

[4] Sandel Avionics, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Vista, California.

2

Subsequently, in March 2003, Honeywell initiated another action (*Honeywell II*) against Universal and Sandel based upon a different TAWS-related patent, the '436 patent. Thereafter, Honeywell requested that the second action be consolidated with the first, which Universal and Sandel opposed. The court denied Honeywell's motion in May 2003.

As a result of claim construction and motion practice in *Honeywell I*, the issues left for trial in this case were certain invalidity defenses,[5] unenforceability due to inequitable conduct, violation of the clean hands doctrine raised by Sandel and the commercial counterclaims asserted by Universal.

Thereafter, the parties agreed to a bench trial for the remaining issues. Universal and Sandel assumed the role of plaintiffs for trial. A seven day bench trial was conducted in November 2003. After post-trial briefing, the court determined that the challenged claims of the patents-in-suit were not invalid or unenforceable due to inequitable conduct and denied Sandel's counterclaim under the clean hands doctrine and Universal's commercial counterclaims.

Subsequently, Honeywell appealed contesting issues of claim construction, infringement, and subject matter jurisdiction. Universal and Sandel cross-appealed on the court's denial of on-sale and public use bar. In addition, Sandel appealed the court's decision that Honeywell did not commit inequitable conduct. Universal similarly appealed the denial of its commercial counterclaims. The Federal Circuit vacated claim

---

[5] Claims 1-3, 8, 9, 13, 24, 34-36, 41 and 43-45 of the '009 patent and claims 1-3 of the '060 patent were found to be anticipated by the prior art. Universal and Sandel's motions for summary judgment of obviousness were denied. The court reserved for trial Universal and Sandel's motion for summary judgment of on-sale and public use bars.

3

construction for certain terms and remanded the matter for a new infringement determination. That court also affirmed this court's retention of jurisdiction over the withdrawn claims and the decision that 35 U.S.C. § 102(b) does not erect a bar. In addition, the Federal Circuit affirmed this court's decision of no inequitable conduct and denial of Universal's commercial counterclaims.

After the matter was remanded, Honeywell withdrew all infringement allegations regarding the '009 and '060 patents and certain claims of the other three patents-in-suit. As a result, the claims presently being asserted by Honeywell are only claim 1 of the '080 patent, claim 1 of the '570 patent and claim 1 of the '592 patent (collectively the "080 patents").

This memorandum opinion addresses Universal and Sandel's joint motion seeking to preclude Honeywell from relitigating its lost profits theory and Universal's motion to prevent Honeywell from seeking an impermissible double recovery on its TAWS sales.

**Factual Background**

As noted previously herein, *Honeywell II* was filed approximately ten months after *Honeywell I*. *Honeywell II* accuses the same terrain awareness and warning systems made and/or sold by Universal and Sandel of infringement as in *Honeywell I*, but the infringement alleged is of a different TAWS-related patent, the '436 patent. In both actions, Honeywell relied upon the same damage expert, Ms. Julie Davis, who prepared separate reports in each case regarding Universal and Sandel. In other words, a total of four damage reports by Davis were submitted in the cases. Each of

4

the Davis reports discusses lost profits and a reasonable royalty, with each asserted to be an appropriate measure of damages.

Because of the court's determination of non-infringement in *Honeywell I*, damages were not tried in that matter. In *Honeywell II*, however, Honeywell presented its lost profits analysis to the jury. The jury returned a verdict against Universal finding that its TAWS product infringed the '436 patent and awarded Honeywell reasonably royalty damages in the amount of $5,448,000. The jury did not award any lost profits. The jury also returned a verdict in favor of Sandel, finding that its TAWS device did not infringe the '436 patent. On January 21, 2005, about six weeks after the verdict, this court entered judgment against Universal and in favor of Sandel based upon the *Honeywell II* jury's verdict.

## Discussion

### Standard of Review-Summary Judgment

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[6] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party that "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof

---

[6] Fed. R. Civ. P. 56(c).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[8]  The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.[9]  A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[11]  However, a party may move for summary judgment with or without supporting affidavits.[12]  Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[13]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial."[14]  If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[15]  That party "may not rest upon the mere allegations or denials of his pleadings, but must

---

[8] *Id.* at 323.

[9] *Id.*

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[11] *Celotex*, 477 U.S. at 323.

[12] *Id.*

[13] *Id.* at 325.

[14] Fed. R. Civ. P. 56(c).

[15] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).

set forth specific facts showing that there is a genuine issue for trial."[16] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[17] Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18] The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[19]

### Issue Preclusion

Issue preclusion, formerly called collateral estoppel, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."[20] Issue preclusion protects a defendant from the burden of litigating an issue that has been fully and fairly tried in a prior action and decided against the plaintiff.[21]

The application of issue preclusion in a patent case is governed by the law of the regional circuit.[22] In the Third Circuit, the requirements for the application of issue preclusion are: "(1) the identical issue was previously adjudicated; (2) the issue was

---

[16] *Anderson*, 477 U.S. at 248.

[17] *Id.* at 249.

[18] *Id.*

[19] *Id.* at 250.

[20] *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

[21] *See Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313 (1971).

[22] *See Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed. Cir. 2002).

actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."[23]  In other words, to have issue preclusion apply, a defendant has to establish that the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior action; the issue was actually litigated; the controlling facts and applicable legal rules were the same in both actions; resolution of the particular issue was essential to the final judgment in the first action; and the identical issue was decided in the first action.[24]

## Position of the Parties

### Universal and Sandel

Universal and Sandel contend that under the doctrine of issue preclusion, Honeywell is barred from seeking lost profits because that issue was litigated in the '436 patent trial, *Honeywell II*, which involved the same parties and the same accused products at issue as in the present matter.  They note that the legal and factual premises relied upon by Honeywell's damage expert, Davis, for her lost profits analysis of the patents-in-suit are identical to those relied upon in her lost profits analysis of the '436 patent.  Davis's lost profits analysis for both cases and against each defendant was based on the four factor test articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*[25]  They assert that the other factors under issue preclusion–final judgment on the merits and full and fair opportunity to litigate the lost profits issue in the prior

---

[23] *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (quoting *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995)).

[24] *Montana v. United States*, 440 U.S. 147, 153-55 (1979); *Blonder-Tongue*, 402 U.S. at 332-33.

[25] 575 F.2d 1152 (6th Cir. 1978).

action–are "indisputably present."

Universal advances additional arguments to limit Honeywell's damage recovery against it in the instant matter.  It maintains that its payment to Honeywell under the '436 patent for sales of the identical TAWS products precludes damages with respect to Universal under the patents-in-suit for the following reasons:  (1) to award damages to Honeywell for infringement of the patents-at-issue results in an "impermissible double recovery because Universal's payment is based on the same set of operative facts;" (2) Universal's payment of the *Honeywell II* judgment fully compensates Honeywell under all of its patents that allegedly cover TAWS and Honeywell is judicially estopped from arguing otherwise; and, (3) Universal's payment creates an implied license to the patents in the present matter.

## Honeywell

Honeywell maintains that the doctrine of issue preclusion does not bar it from seeking lost profits because the damage issue for Universal and Sandel's infringement of the '080 patent family was never litigated and thus, lost profits damages on those patents were never decided.  Honeywell argues that it is not precluded from pursuing damages claim against Universal because of the satisfaction of the '436 jury award of a reasonable royalty.  Honeywell contends that it does not seek an impermissible double recovery and will remit the '436 patent royalty from any additional recovery that could occur in the instant matter.  It denies any disclaimer of the damage recovery it presently seeks, and therefore judicial estoppel does not apply.  Further, Honeywell denies that an implied license to the patents-in-suit arose from Universal's satisfaction of the '436 award.

9

## Analysis

### Issue Preclusion

As noted previously herein, a judgment on the merits "precludes relitigation of issues actually litigated and determined in the prior suit regardless of whether it was based on the same cause of action as the second suit."[26] The primary issue contested between the parties is whether the identical issue of lost profits was decided in *Honeywell II*. Honeywell argues that the '436 trial did not and could not adjudicate its claim to lost profits under the '080 patents and couches the issue as whether it is entitled to obtain the profits lost as a result of defendants' infringement of the '080 patents. Honeywell maintains that the lost profits issue previously decided in *Honeywell II* is not identical because the patents involved are not the same. In support of its argument, Honeywell points to the conduct and position propounded by Universal and Sandel during the '436 trial in which they distinguished the '436 patent from the patents involved in the present action. Contrary to Honeywell's position, Universal and Sandel's emphasis focuses on the identical nature of the legal and factual premises that Honeywell through its expert, Davis, relied upon in its lost profits analysis under the '436 patent and the patents-in-suit.

In determining the "'dimensions of an issue' for the purposes of issue preclusion, a court should ask, *inter alia*, 'Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?' and

---

[26] *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955).

'How closely related are the claims involved in the two proceedings?'"[27]

There is no dispute that the lost profits sought by Honeywell in the '436 matter

and the instant matter are those allegedly lost on the sale of the same Honeywell

EGPWS devices due to Universal and Sandel's sale of their same respective TAWS

products.  Therefore, both the patentee products and the accused products in each

case are the same.  It is undisputed that in her damages analyses in both cases against

each defendant, Davis applied the *Panduit*[28] test to show that Honeywell is entitled to

lost profits.  Moreover, her opinions against each defendant for the '436 case and the

present matter are substantially identical.  Further, the facts supporting each of the

*Panduit* factors relied upon by Davis are identical in both cases against each defendant.

To recover lost profits, the patentee must show a "reasonable probability that,

'but for' the infringement, it would have made the sales that were made by the

infringer."[29]  In using the *Panduit* method to show "but for" causation, Davis individually

analyzed the four factors by referencing the same accused products in both cases

and/or Honeywell's EGPWS.

When identifying the "demand for the patented product," the first *Panduit* factor,

Davis determined that the relevant market included TAWS systems that met a specific

---

[27] *Peloro v. United States*, 488 F.3d 163, 176 n.12 (3d Cir. 2007) (quoting *Restatement (Second) of Judgments* § 27, cmt. c (1982)).

[28] One mechanism for a patentee to show entitlement to lost profits damages is through the four factor test articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Under the *Panduit* test, a patentee must establish: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capacity to exploit the demand; and (4) the amount of profit it would have made." *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1371-72 (Fed. Cir. 2006) (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)).

[29] *Golden Blount, Inc.*, 438 F.3d at 1371 (Fed. Cir. 2006) (quoting *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)).

11

standard by the FAA covering Class A and Class B product designations and that the "*demand for the patented product can be demonstrated by the sales of certified products*," which are the same accused products in both *Honeywell I* and *II* and Honeywell's EGPWS.

Regarding the second *Panduit* factor, lack of acceptable non-infringing substitutes, Davis concluded identically in both cases that she was unaware of any acceptable non-infringing substitutes for Class A TAWS systems, and no such substitutes for Class B TAWS systems until January 2003 when Honeywell licensed Goodrich for Class B TAWS system only. Again her opinion for the second factor, like the first factor, emphasizes the TAWS systems, which are Universal's TAWS, Sandel's ST3400 TAWS/RMI and Honeywell's EGPWS – the same accused products of defendants in both cases and the same Honeywell product from which lost profits are calculated.

In determining the "manufacturing and marketing capability to exploit demand," the third *Panduit* factor, Davis opined in both cases that Universal and Sandel manufacture and sell their respective TAWS systems and other avionic products in the same industry, in the same territory and to the same customers that Honeywell sells its EGPWS product. Davis further concluded that Honeywell's production capacity exceeds the total sales volume of Honeywell, Sandel and Universal combined which demonstrates that Honeywell had the "capacity to produce all of the allegedly infringing TAWS systems made and sold by Universal and/or Sandel during the relevant period . .

. . ,"[30] and also had the necessary marketing means and sales support staff to meet demand. Moreover, the relevant time period involved for alleged infringement is the same in both cases. Again, Honeywell's emphasis through its expert was on the same systems at issue in both cases.

For the fourth *Panduit* factor, that is the amount of profit that Honeywell would have made absent infringement, Davis identically supported her opinions in both *Honeywell I* and *II* by focusing on the same Honeywell EGPWS product. In determining the incremental lost profits that Honeywell would have made on Universal and Sandel's sales, Davis relied upon the same financial information and calculated a margin of 63% to 76% on the EGPWS product.

None of her analyses of the *Panduit* factors in either case was patent specific or addressed the benefits of the '436 patent or the patents-at-issue. Both the '436 patent and the patents-at-issue were lumped together and not distinguished in Honeywell's damages analysis. Contrary to Honeywell's argument that *Panduit* factors refer to the teachings of the specific patent at issue, its lost profits damage analysis did not consider the benefits or invention of a particular patent, such as the '436 patent or the '080 patents, but viewed the benefits/inventions of all of the patents as a whole in relation to Honeywell's EGPWS product and defendants' accused products.

Honeywell's reliance on *Applied Medical Resources Corp. v U.S. Surgical Corp.*[31] is misplaced. In *Applied II*, the court was asked to apply issue preclusion to reasonable royalty damages. In that case, Applied Medical Resources ("Applied") sued

---

[30] D.I. 322, Ex. 8 at 12 and Ex. 9 at 13-14 (Universal); Ex. 10 at 11 and Ex. 11 at 12 (Sandel).
[31] 435 F.3d 1356 (Fed. Cir. 2006) (*Applied II*).

U.S. Surgical Corp. ("U.S. Surgical") alleging that the Versaport II product infringed its patent (the "'553 patent"). In previous litigation, Applied successfully sued U.S. Surgical on the same patent for a different product, Versaport I ("*Applied I*"). In *Applied I*, a jury found infringement of the '553 patent and awarded damages based on a 7% reasonable royalty. U.S. Surgical moved in *Applied II* as a matter of law that reasonable royalty rate for infringing sales of Versaport II was 7% contending that the reasonable royalty was established in *Applied I*. After trial and denial of its Rule 50 motions, on appeal, U.S. Surgical maintained that the district court erred in not giving collateral estoppel effect to the reasonable royalty rate found by a jury in *Applied I*.

In affirming the district court's denial of issue preclusion, the Federal Circuit found that "the issue of reasonable royalty damages in *Applied II* is not identical to the issue of reasonable royalty damages in *Applied I* . . . .," because there were two infringements that began at separate times and involved separate and different products, which would require two different hypothetical negotiation dates.[32] Moreover, U.S. Surgical conceded that its accused products at issue in each matter were "vastly different." The court noted that calculating reasonable royalty damages requires considering the infringement being redressed, which requires evaluating damages based on a hypothetical negotiation at the time when the infringement began. Because the infringement in *Applied II* resulted from sales of a product which began in 1997, while the infringement in *Applied I* involved sales of a different product which started in 1994, the court determined that the damages issues were not identical and the prior

---

[32] *Id.* at 1361-63.

14

jury evaluation of reasonable royalty damages did not have preclusive effect.

Notably, in *Applied II*, the Federal Circuit acknowledge, "[w]e recognize that there may be instances, which we do not address here, in which two products, even if not identical, may present the same damages analysis.  That is not the case here."[33]

Contrary to *Applied II*, both the accused products and the patentee's products involved in the lost profits damages analysis are the identical products at issue in *Honeywell I* and *II*.  The factual evidence on which Honeywell's damages expert based her analysis is the same for the '436 patent and the '080 patents.  Moreover, her damages evaluation is the same for both sets of patents.  Honeywell through its damages expert reports does not distinguish between the '436 patent and '080 patents in determining whether lost profits damages were incurred or the range of those lost profits as a result of the sale of the accused products.  Rather, Honeywell's mirrored lost profits damages analysis makes whether the accused products infringe the '436 patent, the '080 patents or both, and the teachings of those patents, irrelevant.  According to Honeywell's damage analysis, as long as the same accused products infringe any of the patents-at-issue in either case, the same lost profits are recoverable based on the same reasoning.

Honeywell tacitly agrees that the damage analyses for the '436 patent and the '080 patents are identical by admitting that no additional royalty may be recovered from Universal on the '080 patents because of its satisfaction of the award under the '436 patent.  That acknowledgment recognizes that Honeywell's damage analysis does not

---

[33] *Id.* at 1363.

15

distinguish nor rely on the distinct and separate inventions of the '436 patent and the '080 patents.

How *defendants* argued against the application of lost profits in *Honeywell II* is not the issue. Rather, it is whether *Honeywell*, the party against whom issue preclusion is being alleged, had the full and fair opportunity to litigate the issue in the prior action.[34] It did, as evidenced by its expert reports on damages and the trial testimony on lost profits.[35]   Honeywell damages evidence demonstrated that but for defendants' infringement of either the '436 patent or the '080 patents, it would have sold its EGPWS to every customer who purchased defendants' TAWS systems. Therefore, the availability of non-infringing substitutes under Honeywell's damages analysis was not linked to a particular patent, but to its product and those of the defendants that allegedly employed the inventions of the '436 and/or '080 patents.

Further, to recover lost profits, the patentee must have been selling "some item, the profits of which have been lost due to infringing sales."[36]  The opportunity to recover lost profits is not limited to where the patentee is selling the patented device.[37] Therefore, under a lost profits analysis, the infringing sales are important. Here, the same infringing sales of the same infringing products under the '080 patents have

---

[34] *Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("[T]he requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.").

[35] To the extent that there is any suggestion that Universal and Sandel's opposition to adding the '436 patent to *Honeywell I* operates against their position herein, the court notes that Honeywell chose to file *Honeywell II* ten months after *Honeywell I* and only four days before claim construction briefing was due in *Honeywell I*. Further, Honeywell moved for consolidation after claim construction briefing in *Honeywell I* had been completed and the *Markman* hearing had occurred.

[36] *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

[37] *Id.*

16

already been tried in relation to the '436 patent.

Honeywell maintains that since the jury in *Honeywell II* found no infringement of Sandel's TAWs product, it never reached the issue whether to award lost profits. As a result, the verdict is not preclusive as to Sandel because lost profits was not necessary to the judgment. Clearly, the issue of lost profits was necessary to the judgment against Universal and Honeywell does not argue otherwise.[38] Although a jury did not find infringement against Sandel, the preclusive effect operates because the issue of lost profits was the same against Universal and Sandel as evidenced by Honeywell's identical reasoning applicable to each defendant. The only difference in Honeywell's damages analysis between defendants was the number of TAWS units each manufactured and sold. The analysis under *Panduit* was the same for both. As a result, Honeywell completely litigated the issue of lost profits against Sandel in *Honeywell II*.

Therefore, for the reasons contained herein, issue preclusion operates and prevents Honeywell from relitigating its lost profits analysis in the present matter.

Reconsideration on Standing

Initially a passing reference in a footnote in their opening brief, defendants ask the court to reconsider its prior decision on standing to recover lost profits in *Honeywell Int'l. Inc. v. Universal Avionics Sys. Corp.*[39] based on newly available evidence. When a motion for reconsideration is timely filed under D. Del. LR 7.1.5 and challenges the correctness of a previously entered order, it is viewed as a motion to alter or amend a

[38] The focus of Honeywell's argument rests primarily whether the issue is identical.
[39] 347 F. Supp. 2d 124 (D. Del. 2004)

17

judgment under Fed. R. Civ. P. 59(e).[40] The purpose of such a motion is "to correct manifest errors of law or fact or to present newly discovered evidence."[41] Such motions are only granted sparingly and should not be "used to rehash arguments which have already been briefed by the parties and considered by the Court."[42] Defendants' "new evidence" is that in March 2008, HIPI "transferred all of its assets, including all rights under the patents-in-suit" to Honeywell International Inc. This new information, however, did not change defendants' arguments; they essentially raise the same contentions previously addressed and rejected by the court. Defendants previously contended that because of the arrangement between Honeywell Intellectual Properties Inc. and Honeywell International and the fact that only the latter manufactured a device, lost profits were not recoverable.[43] Defendants also maintained that because Honeywell International initially transferred ownership of the '436 patent to HIPI, it transacted away its ability to recover lost profits. In its prior decision, the court rejected the same arguments that defendants are again repeating including their contention that Honeywell International is not an exclusive licensee. In previously rejecting defendants' arguments, the court also found that the recovery of lost profits by a patentee "is not limited to the situation in which the patentee is selling the patented device."[44]

Defendants also point to the recent decision of *Mars, Inc. v. Coin Acceptors,*

[40] *In re DaimlerChrysler AG Securities Litigation*, 200 F. Supp. 2d 439, 441 (D. Del. 2002). The court does not address whether Universal and Sandel's motion for reconsideration is timely filed under D. Del. LR 7.1.5.

[41] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

[42] *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 527 (D. Del. 2005) (citing *Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990)).

[43] The arguments were made in the context of the '436 patent.

[44] *Honeywell Int'l. Inc.*, 347 F. Supp. 2d at 125.

18

Inc.,[45] where the court held that a non-exclusive licensee to a patent lacked standing to pursue lost profits for infringement. The license which controlled the rights of the parties in *Mars* was significantly different from the agreement involved in the instant matter. As noted in its prior decision, the Honeywell Licensing agreement clearly provided that Honeywell International was granted "'an exclusive license to use the Intellectual Property.'"[46] The terms of the contract in *Mars* preserved a separate, pre-existing license to another entity. Moreover, this court also found that the subsequent decision by Honeywell International and HIPI to jointly sublicense did not effect the exclusive relationship. Nothing in *Mars* changes that conclusion.

The recent asset transfer between HIPI and Honeywell International does not effect the court's prior analysis and ruling, and therefore, its decision will not be revisited. Since defendants "simply rehash materials and theories already briefed, argued and decided", the court will not reconsider the standing issue and defendants' motion for reconsideration is denied.[47]

### Universal's motion

Universal raises three additional arguments against Honeywell's pursuit of lost profits under the '080 patents. Those arguments are impermissible double recovery, judicial estoppel and implied license. Universal emphasizes that Honeywell's attempt to

---

[45] 2008 WL 2229783 (Fed. Cir. June 2, 2008).

[46] *Honeywell Int'l.*, 347 F. Supp. 2d at 128.

[47] Defendants suggest that Honeywell was required to address its arguments and it failed to do so. That argument misrepresents upon whom the burden for reconsideration rests. A party need not regurgitate its previous arguments where the moving party merely rehashed arguments already considered and rejected by the court. *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998).

recover lost profits in the present matter contravenes the jury award of a reasonable royalty in *Honeywell II*. It urges that on those TAWS units for which a royalty payment has been made, Honeywell is not entitled to collect a second damage award from Universal on the same TAWS units.[48]

In light of the decision herein on issue preclusion, the court need not address Universal's motion on whether lost profits damages under the '080 patents would constitute an impermissible double recovery, are judicially estopped or have been impliedly licensed. Those issues presently are moot.

## Conclusion

For the reasons contained herein, Universal and Sandel's joint motions are granted in part and denied in part. Universal's motion based on a double recovery, judicial estoppel and implied license is moot. An order consistent with this opinion shall follow.

---

[48] There is no dispute that any TAWS units sold by Universal after November 5, 2004 (the date through which the jury award in *Honeywell II* applies) are not included in Universal's arguments. In other words, its satisfaction of the '436 judgment does not cover additional TAWS sold after that date which infringe the '080 patents. The parties also do not dispute that Honeywell is not entitled to an additional reasonable royalty payment under the '080 patents for the TAWS units included in the damages award in *Honeywell II*. Accordingly, Honeywell maintains that it is only seeking a lost profits award on the '080 patents which will be reduced by the royalty already received.